United States District Court
Southern District of Texas
**ENTERED**
May 03, 2019
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAVID NORWAY WINSTEAD, | § | |
|    Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:16-cv-0016 |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|    Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is David Norway Winstead's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (hereinafter, Winstead's "Petition"). Dkt. No. 1. For the reasons stated below, it is recommended that Winstead's Petition be **DISMISSED** with prejudice as untimely filed, and that the Clerk of Court be directed to close this case. It is further recommended that the Court decline to issue a certificate of appealability.

## I.       Background and Procedural History

On September 7, 2012, following a jury trial, Winstead was found guilty of one count of tampering with or fabricating physical evidence and one count of possession of a controlled substance. Dkt. No. 7-6 at 126, 128, 130. Winstead was sentenced to 30 years of imprisonment for the first count and 7 years of imprisonment for the second count, to be served concurrently. *Id*. at 126, 128.

Winstead, through counsel, filed a notice of appeal on September 27, 2012.  *Id*. at 162.  The Thirteenth Court of Appeals affirmed Winstead's conviction on August 7, 2014.  Dkt. No. 7-7 at 16.  Winstead had until September 6, 2014 to file a petition for discretionary review ("PDR"), which he did not do.[1]  *See* TEX. R. APP. P. 68.2(a).

Winstead, through Attorney Larry Warner, then filed three state applications for habeas corpus on August 6, 2015 (Dkt. No. 8-8 at 2, 4; Dkt. No. 8-11 at 8) (hereinafter, Winstead's "First State Application"), December 23, 2015 (Dkt. No. 8-16 at 2, 4) (hereinafter, Winstead's "Second State Application"), and February 17, 2016 (Dkt. No. 8-18 at 2, 4) (hereinafter, Winstead's "Third State Application").[2] The First and Second State Application were both dismissed for failure to comply with Texas Rule of Appellate Procedure 73.1.  Dkt. No. 8-7 at 1 (dismissing the First State Application on September 23, 2015); Dkt. No. 8-14 at 1 (dismissing the Second State Application on January 27, 2016).  The Third State Application was properly filed on February 17, 2016.  Upon review, the 357th District Court recommended that Winstead's Third State Application be denied.  Dkt. No. 19-6 at 31−33.  The Texas Court of Criminal Appeals denied Winstead's Third State Application on October 19, 2016 after reviewing the recommendation of the 357th District Court. Dkt. No. 19-1.

---

[1] Winstead has been represented by counsel throughout his direct appeals and his efforts to receive post-conviction relief.

[2] The Court notes that in its previous Report and Recommendation, the dates for Winstead's State Applications were erroneously listed as September 11, 2015, January 19, 2016, and February 23, 2016.  *See* Dkt. No. 20 at 2.  However, those dates represent when each respective application was received by the Texas Court of Criminal Appeals.  August 6, 2015, December 23, 2015, and February 17, 2016 are the dates that the state applications were filed in the 357th District Court.  The Court also notes that this correction does not substantively change the analysis of its previously issued Report and Recommendation.

On January 22, 2016, while his Second State Application was still pending before the Texas Court of Criminal Appeals, Winstead filed the instant Petition. Dkt. No. 1.  Noting that his Second State Application had not yet been adjudicated, this Court ordered Winstead to show cause as to why his Petition should not be dismissed for failure to exhaust available state remedies.  Dkt. No. 2.  On February 19, 2016, after receiving the notice of dismissal of his Second State Application and after filing his Third State Application, Winstead responded that, because "[t]he Petition has been filed, it has a number, the fee has been paid, [and] the Petition has been signed and dated," the Court should "abate the Petition" rather than dismiss it.  Dkt. No. 4 at 6.  Before this Court issued an order regarding whether to abate or dismiss his Petition, the Texas Court of Criminal Appeals denied Winstead's Third State Application.  *See* Dkt. No. 19-1.  This Court thereafter continued reviewing Winstead's Petition.

On April 4, 2018, the undersigned issued a Report and Recommendation (hereinafter, the "R&R").  Dkt. No. 20.  The R&R concluded that, absent any tolling provisions, Winstead's window to seek relief pursuant to 28 U.S.C. § 2254 closed on September 6, 2015.  *Id.* at 7.  The Court found that Winstead had not met his threshold burden of demonstrating he was incompetent during the relevant timeframe, and that even if he could make such a showing, Winstead had failed to show any causal connection between his alleged incompetency and his failure to file a timely federal petition.  *Id.* at 8−10.  Because Winstead had not met his burden of

showing he was entitled to statutory or equitable tolling, the undersigned recommended dismissal of the Petition with prejudice.

Winstead timely filed objections to the R&R and requested an evidentiary hearing on the issue of equitable tolling. *See* Dkt. No. 21. On May 22, 2018, District Judge Rolando Olvera issued an "Order of Remand" (Dkt. No. 22), instructing the undersigned to conduct a hearing on the issue of whether Winstead was mentally incompetent, and whether that alleged incompetency prevented him from timely filing his Petition. The undersigned set the case for an evidentiary hearing on these issues, which ultimately took place on January 17, 2019.[3] Dkt. No. 57. The pertinent timeframe for review was from September 6, 2014 until September 6, 2015 (hereinafter, the "Limitations Period").[4]

During that hearing, Winstead called four witnesses: Dr. John Pinkerman, Chantal Winstead, San Juan Herrera Winstead, and Larry Warner. *See* Dkt. No. 74 at 14, 60, 62, 71. Dr. Pinkerman had previously authored a one-and-a-half-page document addressed to the Court, labeled a "Psychological Consultation." Dkt. No. 17-1. Although he did not "have an opinion about [Winstead's] competency," Dr. Pinkerman testified that, based on his review of written records from other professionals, Winstead exhibited "a consistent pattern of significant, severe, and pretty profound mental illness that affected [Winstead] from the standpoint of his

---

[3] The Court first set the evidentiary hearing for June 7, 2018. Dkt. No. 23. However, at the request of both parties, the hearing had to be reset multiple times. *See* Dkt. No. 26 (Davis requesting continuance); Dkt. No. 35 (Petitioner requesting continuance); Dkt. No. 41 (Petitioner requesting continuance); Dkt. No. 46 (Petitioner requesting continuance); Dkt. No. 52 (Petitioner requesting continuance); Dkt. No. 54 (Petitioner requesting reconsideration of previously denied request for continuance).

[4] The determination of these dates is discussed *infra*.

activities of daily life." Dkt. No. 74 at 25, 40.  Dr. Pinkerman qualified his opinion, stating that he could not determine how frequently Winstead had "fluctuations" in his symptoms.  He agreed that, based on a written legal filing dated September 18, 2014, Winstead "was cogent and perfectly capable of asserting legal rights" at the time he authored that document.  Dkt. No. 74 at 46.  Dr. Pinkerman had not visited Winstead prior to rendering his opinion, instead relying on a review of documents from other treating physicians, prison officials, and Winstead's mother.  Dr. Pinkerman ultimately stated that he could not identify a timeframe during which Winstead would have been deemed incompetent; he stated that Winstead's "functioning during [the Limitations Period] was variable" without any further specificity.  Dkt. No. 74 at 55.

The next witness at the evidentiary hearing was Chantal Winstead (hereinafter, "Chantal"), Winstead's older sister.  Chantal testified that she received a letter from one of Winstead's fellow inmates.  Dkt. No. 74 at 61.  That letter, however, was written outside of the Limitations Period, and Dr. Pinkerman "testified that [it] . . . had no bearing on his opinion."  *Id.*  Chantal did not offer additional testimony.

Third, Winstead's counsel called San Juana Herrera Winstead (hereinafter, "San Juana"), Winstead's mother.  Dkt. No. 74 at 62.  San Juana testified that she did not remember whether she had visited Winstead in person during the Limitations Period.  *Id.* at 63.  However, TDCJ records show that she visited with her son at least four times during the Limitations Period, on February 14, 2015,

July 5, 2015, August 15, 2015, and August 16, 2015.  Dkt. No. 66-1 at 47.  She testified that she had met with Dr. Pinkerman and Warner to discuss Winstead's medical history.  *Id*. at 65−66.  San Juana clarified that she had provided the medical documents to Warner in June 2015.  *Id*. at 66.  San Juana also testified that she exchanged letters with her son throughout the time he was incarcerated, including during the Limitations Period.  Dkt. No. 74 at 67.  She recalled that "Warner did communicate with" Winstead.  *Id*. at 68.  That testimony was corroborated by a prison mail log, previously admitted into evidence.  Dkt. No. 66-1; *see also* Dkt. No. 74 at 69−70.  The outgoing prisoner mail log shows that Winstead sent letters to Warner on September 25, 2014, October 31, 2014, November 10, 2014, December 5, 2014, December 12, 2014, February 17, 2015, April 1, 2015, and April 3, 2015.  Dkt. No. 66-1.

The final witness at the evidentiary hearing was Larry Warner, the attorney who represented Winstead from April 18, 2014 until September 9, 2016.  *See* Dkt. No. 74 at 80 (Warner testifying that he was hired "on April 18th of 2014"); *see also* Dkt. No. 16 (Court Order granting Warner's Motion to Substitute Counsel).  Warner testified regarding his experience with "clients with psychiatric issues," and his legal experience more generally.  Dkt. No. 74 at 72−74.  Warner testified that he did not file a federal habeas petition between September 6, 2014 and September 6, 2015 because Winstead "just couldn't help" him.  *Id*. at 75.  Warner clarified that Winstead "couldn't help [him] . . . at all, ever."  *Id*. at 84.  When asked about his basis for this opinion, Warner cited conversations with San Juana, and the single

time he visited Winstead "very soon after" April 2014. *Id.* at 76, 91–92, 104. He did not reference any mail, phone, or face-to-face conversations he had with Winstead when making this assertion. When asked why he did file the instant Petition on Winstead's behalf on January 22, 2016, Warner responded that he "had to do something," but did not cite any change in Winstead's mental capacity. Dkt. No. 74 at 76. In review of all three state habeas applications, Warner conceded that there were multiple claims that he "thinks [he] could raise without conferring with" Winstead, since they were purely legal claims. *Id.* at 99–102.

Following the evidentiary hearing, the Court ordered Winstead to file a supplemental brief, and allowed Davis time to file a response. Dkt. No. 71. Winstead timely filed his Supplemental Brief (Dkt. No. 77), and Davis filed a Response (Dkt. No. 81). The Supplemental Brief and Response primarily focused on whether Winstead was entitled to equitable tolling based on the record, including testimony taken at the evidentiary hearing.

## II.    Legal Standard

The applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern petitions brought under 28 U.S.C. § 2254. *Lindh v. Murphy*, 521 U.S. 320, 335–336 (1997). Pursuant to the AEDPA, a federal court may not grant habeas relief based upon a claim that was adjudicated on the merits by a state court unless the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011). Codified as amended at 28 U.S.C. § 2244(d), the AEDPA also provides for a one-year limitations period applicable to petitions filed under 28 U.S.C. § 2254. *Lindh*, 521 U.S. at 336. Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Section 2244(d)(2) allows for statutory tolling of the limitations period. In

addition, because the one-year AEDPA limitations period is not jurisdictional, there is the possibility that it may be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (internal citations omitted). In *Holland*, the Supreme Court stressed that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied," and that this determination is "made on a case-by-case basis." *Id.* at 650, 652. The Fifth Circuit has explained that "equitable tolling is warranted only in 'situations where the plaintiff is actively misled by the defendant . . . or is prevented in some extraordinary way from asserting his rights.'" *Jones v. Stephens*, 541 Fed. Appx. 499, 503 (5th Cir. 2013) (quoting *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)). "The petitioner bears the burden of proving that he is entitled to equitable tolling." *Williams v. Thaler*, 400 Fed. Appx. 886, 889 (5th Cir. 2010) (citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)).

## III.   Discussion

This Court previously recommended that Winstead's Petition be dismissed with prejudice because it was filed after the AEDPA limitations period had elapsed. Dkt. No. 20.   Pursuant to Judge Olvera's "Order of Remand" (Dkt. No. 22), the Court held an evidentiary hearing to determine: (1) whether Winstead met his

threshold burden of showing he was incompetent during the Limitations Period; and (2) whether Winstead had demonstrated a causal link between incompetency and his untimely filing. *See* Dkt. No. 23 (order setting evidentiary hearing); *see also* Dkt. No. 74 (transcript of the evidentiary hearing).

Following the evidentiary hearing, both sides were permitted to file additional briefs. Dkt. No. 71. In his "Supplemental Brief," Winstead conceded that his Petition was filed "one hundred and thirty-eight (138) days after the Limitations Period." Dkt. No. 77 at 4. However, he argued that equitable tolling should apply because both "Winstead's mental illness" and "Warner's performance" were extraordinary circumstances, warranting equitable tolling. Davis filed a Response, contending: (1) Winstead's competence is irrelevant because San Juana managed his case; (2) Winstead has not shown he was incompetent; (3) Warner's actions do not entitle Winstead to equitable tolling because his actions were a "garden variety claim of excusable neglect"; (4) even assuming Winstead was incompetent, he did not demonstrate that the alleged incompetency caused the untimely filing of his Petition; and (5) even assuming Winstead had demonstrated "extraordinary circumstances" existed, he still has not demonstrated that he exercised reasonable diligence during the limitations period. Dkt. No. 81.

**A. Winstead's Petition Is Untimely.**

The AEDPA one-year statute of limitations runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Texas Court of

Criminal Appeals affirmed Winstead's conviction on August 7, 2014. Dkt. No. 7-7 at 16. Pursuant to state law, Winstead had until September 6, 2014 to file a PDR, which he did not do. TEX. R. APP. P. 68.2(a) ("The [PDR] must be filed within 30 days after either the day the court of appeals' judgment was rendered or the day the last timely motion for rehearing or timely motion for en banc reconsideration was overruled by the court of appeals."). Consequently, Winstead's conviction became "final" for purposes of the AEDPA on September 6, 2014. Assuming no tolling provisions apply, Winstead had until September 6, 2015—one year after the expiration of his timeframe to seek direct review—to file his Petition. 28 U.S.C. § 2244(d)(1)(A).[5] Winstead filed his Petition on January 22, 2016. Dkt. No. 1. Because Winstead's Petition was filed outside the Limitations Period, it is untimely under the AEDPA and subject to dismissal unless he is entitled to tolling.

**B. Winstead Is Not Entitled to Statutory Tolling.[6]**

Under the AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2). Stated differently, a "properly filed" state habeas application tolls the AEDPA limitations period. A state petition filed after

---

[5] The Court notes that both Winstead and Davis have conceded that, absent tolling provisions, Winstead's Petition was due on or before September 6, 2015. *See* Dkt. No. 9 at 6; Dkt. No. 77 at 2.

[6] In its previous R&R, this Court determined that statutory tolling did not apply to Winstead's Petition. Dkt. No. 20 at 6–7. Neither party filed objections to this finding, and the District Judge's "Order of Remand" did not request this Court to re-visit its determination. Dkt. Nos. 21, 22. This section, therefore, is included merely for the sake of completeness and is consistent with the Court's prior R&R, other than containing corrected filing dates for Winstead's State Applications. *See supra*, n.2.

the AEDPA time limit has already run, however, has no effect on the time bar. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("[Petitioner]'s state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired."). For purposes of tolling under the AEDPA, "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000).

Here, Winstead did not properly file any state habeas application during the Limitations Period. Winstead's First State Application, which was filed on August 6, 2015, does not toll the federal limitations period because it was not properly filed. *See* Dkt. No. 8-7 at 1 (dismissing Winstead's First State Application for failure to comply with Texas Rule of Appellate Procedure 73.1). Winstead's Second and Third State Applications were filed after the federal limitations period expired, and therefore do not trigger statutory tolling. *See* Dkt. No. 8-16 at 2, 4 (noting Winstead's Second State Application was filed on December 23, 2015); *see also* Dkt. No. 8-18 at 2, 4 (noting Winstead's Third State Application was filed on February 17, 2016). Statutory tolling under 28 U.S.C. § 2244(d)(2) is therefore not warranted in this case.

### C. Winstead Is Not Entitled to Equitable Tolling.

To obtain the benefit of equitable tolling, Winstead must establish that: (1) some "extraordinary circumstance" stood in his way and "prevented" timely filing; and, (2) he pursued habeas relief with "reasonable diligence." *Manning v. Epps*, 688

F.3d 177, 183 (5th Cir. 2012) (citing *Holland*, 560 U.S. at 648).  The Court will address Winstead's allegations of an extraordinary circumstance, including Winstead's failure to demonstrate a causal link between the alleged circumstances and the untimely filing of his Petition, as well as the impact of Warner's actions on Winstead's equitable tolling claim.

### i.   Winstead Has Not Demonstrated the Existence of an Extraordinary Circumstance.

The Fifth Circuit has acknowledged that mental illness, if sufficiently severe, may qualify as an extraordinary circumstance that, when coupled with a showing that it prevented the petitioner from filing, justifies equitable tolling of the AEDPA statutory time period.  *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999).  To constitute an "extraordinary circumstance," the alleged mental illness must not only have existed during the relevant time period, but it "must have actually been an impediment to filing in a timely manner."  *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002); *see also Jones v. Stephens*, 541 Fed. Appx. 499, 505 (5th Cir. 2013) ("[A] petitioner (i) must make a threshold showing of incompetence and (ii) must show that this incompetence affected his ability to file a timely habeas petition").  A mere diagnosis or treatment of a mental illness is insufficient.  *Robison v. Hinkle*, 610 F. Supp. 2d 533, 542 (E.D. Va. 2009) ("A claim of continuing psychiatric care is insufficient to trigger equitable tolling.").  The mental illness must have prevented the petitioner from managing his affairs and from understanding his legal rights, and an evidentiary showing must be made which links the mental incompetency to the inability to timely file.

Here, Winstead has not made the threshold showing that he had a mental illness rendering him incompetent during the Limitations Period. Winstead submitted medical records and proffered testimony from Dr. Pinkerman and Warner. Winstead argues that, based on this evidence, his mental illness should be considered an extraordinary circumstance; however, Winstead has not carried his burden.

Winstead's medical records from his incarceration in the Texas Department of Criminal Justice (the "TDCJ") have been filed. Dkt. No. 61. These records range in date from May of 2013 through May of 2018. *See id.* at 629, 1028. For purposes of determining whether equitable tolling applies, the Court only considers medical records concerning Winstead's mental health during the Limitations Period. The Court finds the relevant TDCJ medical records, which were prepared during the Limitations Period by treating medical staff, to be a credible, probative source of information on the question of Winstead's mental competence.

The medical records from the Limitations Period do not support Winstead's contention that he was mentally incompetent. Many of the records from the Limitations Period indicate that Winstead had threatened self-harm or suicide in order: (1) to secure a medical appointment; (2) to be prescribed particular medication Winstead had requested by name; or (3) to receive other items, such as extra coffee. *See* Dkt. No. 61 at 255, 267, 423, 693, 715−16. 733, 736. During these mental health visits, Winstead was described as adequately groomed, exhibiting appropriate behavior, and having a "congruent" affect. *See, e.g.*, Dkt. No. 61 at

268–69, 727, 733.  He was able to answer the medical staff's questions.  *Id.*

The TDCJ records also contain an M-FAST exam, which was conducted by a medical professional on May 28, 2015.  Dkt. No. 61 at 694.  The exam was administered because Winstead had exhibited a pattern of threatening self-harm and quickly retracting those threats.  *Id.* at 694, 718–19.  The M-FAST exam is a tool used by medical professionals to determine whether a patient is accurately describing mental health symptoms, or whether the symptoms are falsely reported or exaggerated.  Dkt. No. 74 at 43–44.  The administrator of this exam determined that Winstead "appear[ed] to be malingering symptoms of mental illness for secondary gain."  Dkt. No. 61 at 718.  The only mention of any mental health diagnosis by name during the Limitations Period is a passing reference to an "impulse control disorder," which was "first observed" on June 3, 2015.  Dkt. No. 61 at 697.  The record does not indicate that this diagnosis severely impacted Winstead's daily life.

Winstead attempts to use testimony from Dr. Pinkerman to demonstrate his mental illness or incompetency during the Limitations Period.  Unlike the medical officials who prepared the TDCJ records, Dr. Pinkerman never met with or spoke directly to Winstead.  Dkt. No. 74 at 41–42.  Dr. Pinkerman testified that he was not able to render an opinion on Winstead's competency.  *Id.* at 25.  Dr. Pinkerman instead provided a summary of the TDCJ records, opining that Winstead suffered from intermittent periods of mental illness.  Although he stated that he did not believe Winstead could have overseen and consulted with others about his legal case

"on a consistent basis," Dr. Pinkerman was not able to testify as to the frequency, duration, or severity of these periods. *Id*. at 40–41. Instead, the only testimony Dr. Pinkerman was able to provide was that, based on his review of TDCJ records and conversations with Warner and San Juana, he observed "that [Winstead's] general mental function and emotional function was . . . fluctuating[.]" *Id*. at 41.

Petitioners seeking equitable tolling bear the burden to show they are entitled to it. *See Williams*, 400 Fed. Appx. at 889 (5th Cir. 2010). Here, Winstead has not satisfied his evidentiary burden because he has failed to put forth specific evidence regarding the nature of his alleged mental illness, the degree of incapacity resulting from his alleged mental illness, or the length of time he suffered from the alleged mental illness. Courts in the Fifth Circuit have held that without such specificity, habeas petitioners have not met their burden of showing that they "lacked the mental capacity to pursue [their] legal rights during the relevant time period." *Ambers v. Cockrell*, 2002 WL 1544703 (N.D. Tex. 2002).

Even if Dr. Pinkerman were able to provide more specific testimony about the nature, severity, and duration of Winstead's mental illness, Winstead still would not be entitled to equitable tolling. The Fifth Circuit has found that "a brief period of incapacity during a one-year statute of limitations . . . does not warrant equitable tolling." *Fisher v. Johnson*, 174 F.3d 710 (5th Cir. 1999) (declining to equitably toll a petitioner's AEDPA limitations period notwithstanding stints up to seventeen days in a psychiatric ward without access to research or writing materials, and notwithstanding delays in the petitioner's receipt of case updates).

The Court also does not find Warner's opinions persuasive. Although Warner testified that he had some exposure to clients with competency issues (Dkt. No. 74 at 72−74), Warner did not ever meet face-to-face with Winstead during the Limitations Period. Dkt. No. 74 at 91−92. Despite only meeting with Winstead one time prior to the Limitations Period, Warner testified that Winstead could not assist him with filing any application for post-conviction relief "at all, ever." Dkt. No. 74 at 84. However, Warner did file three state habeas applications and the instant Petition during Winstead's alleged incompetency.[7] Courts have repeatedly declined to extend equitable tolling to petitioners where, as here, the petitioner made legal filings during the period of alleged incompetency. *See Smith v. Kelly*, 301 Fed. Appx. 375 (5th Cir. 2008) (stating that, because the petitioner was able to file a state-court habeas application during the federal limitations period, he was not entitled to equitable tolling); *Boothe v. Quaterman*, 2008 WL 1771919 (S.D. Tex. 2008) (stating that "[c]ourts have denied equitable tolling where petitioners were plainly able to manage their legal affairs during their alleged incompetency"); *Hennington v. Johnson*, 2001 WL 210405, *4 (N.D. Tex. 2001) (holding that petitioner's various lawsuits during the period for which he sought equitable tolling belied any claim that his mental illness prevented him from managing his legal affairs); *Gaston v. Palmer*, 417 F.3d 1030 (9th Cir. 2005) (finding that equitable tolling was not warranted where a habeas petitioner was able to file state applications for post-conviction relief before and after the AEDPA limitations period

---

[7] In fact, Winstead's First State Application was filed during the federal Limitations Period, evincing that Warner was able to file a habeas petition even though he believed Winstead was not mentally competent. Dkt. No. 8-8 at 2, 4.

ran).

> ### ii.   Winstead Has Not Shown a Causal Link Between His Purported Mental Incompetency and His Failure to Timely File.

Even assuming Winstead had met his burden of showing that he suffered from a mental illness during the limitations period, he has failed to show that his alleged incompetence rendered him unable to timely file a federal habeas petition. Courts in the Fifth Circuit have held that mental illness only justifies equitable tolling where the purported mental illness renders the petitioner *unable* to pursue his legal rights during the Limitations Period, not merely making the pursuit of such rights more difficult. *See Evans v. Stephens*, 2015 WL 9595284 (N.D. Tex. 2015).

Here, however, Winstead was plainly able to pursue his legal rights throughout the Limitations Period. Winstead's First State Application was filed with nearly a month left in the federal Limitations Period, evincing that the claims in his instant Petition could have been timely filed. In addition, the TDCJ mail logs reflect that Winstead, on his own, sent multiple legal documents during the Limitations Period. Dkt. No. 66-1 at 2−37. Winstead also mailed out requests to the Texas State Law Library during the Limitations Period. *Id.* at 35 (outgoing requests to the State Law Library dated June 19, 2015). The Fifth Circuit has found that no causal link exists between purported mental illness and failure to timely file where the petitioner visited a law library or filed administrative requests during the federal limitations period. *See Hulsey v. Thaler*, 421 Fed. Appx. 386 (5th

Cir. 2011).

The Court also notes that Winstead was represented by counsel throughout the Limitations Period. Although the fact of representation is not dispositive, courts that extend equitable tolling based on competency emphasize the petitioner's pro se status. *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) ("[A] *pro se* prisoner such as Fisher simply cannot pursue his legal rights during such a period.") (emphasis in original); *see also Reupert v. Workman*, 45 Fed. Appx. 852, 854 (10th Cir. 2002) ("[T]he record indicates that [the petitioner] was represented and pursuing legal remedies during the pertinent time period. Courts have been extremely reluctant to apply equitable tolling in such circumstances.").

### iii.   Warner's Conduct Does Not Justify Equitable Tolling.

Although this case has been pending for more than three years, and Winstead's current counsel has been working on the case since September 2016, Winstead argues, for the first time in his Supplemental Brief, that he is entitled to equitable tolling based on the *combination of* his purported mental illness and the actions of prior counsel, Larry Warner. In his Supplemental Brief, Winstead contends that "Warner's conduct was intentionally misleading to" Winstead. Dkt. No. 77 at 7. However, the only evidence Winstead cites to in support of this assertion is dubious at best.

Winstead argues that Warner "failed to inform [Winstead] or [San Juana] of important information that impacted [Winstead's] right to seek federal relief." However, Winstead cites to pages 102−103 of the evidentiary hearing transcript as

his only support for this conclusion.  A plain reading of that testimony reveals that Warner simply *was not sure* whether he communicated the case developments to either Winstead or San Juana.  Dkt. No. 74 at 102–03.  Winstead also alleges that Warner's actions entitle him to equitable tolling because "Warner mailed [Winstead's] first state petition on September 3, 2015."  Dkt. No. 77 at 8.  This date is not accurate; Winstead's First State Application was filed with the 357th District Court on August 6, 2015, a month before the end of his Limitations Period.  Dkt. No. 8-8 at 2.  Further, Winstead does not explain how the time of filing for his First State Application would constitute being "intentionally misled" by Warner.  Without any evidence that Warner intentionally failed to communicate case information or otherwise "intentionally misled" Winstead, the Court will not entertain such claims for the first time at this late stage of the proceedings.[8]

## IV.    Certificate of Appealability

A certificate of appealability shall not issue unless the movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542

---

[8] Even assuming these claims had been timely raised, the Court expresses serious doubt that Winstead would be entitled to equitable tolling on this basis.  Winstead has failed to meet his burden of demonstrating that Warner's conduct was more than just "a garden variety of excusable neglect." Mere negligence on the part of an attorney does not entitle habeas petitioners to equitable tolling of their AEDPA limitations period.  *See Holland*, 560 U.S. at 651–52.

(2000).  Said differently, where claims have been dismissed on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  Where claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition state a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability should not issue in this case because Winstead has not made a substantial showing of the denial of a constitutional right.

## V.    Recommendation

It is recommended that Winstead's Petition be **DIMISSED** with prejudice as untimely filed, and that the Clerk of Court be directed to close this case.  It is further recommended that a certificate of appealability not issue.

## VI.    Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-

to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1).

SIGNED on this 3rd day of May, 2019, at Brownsville, Texas.

**Ignacio Torteya, III**
**United States Magistrate Judge**